UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

FREDDIE KIDD, SR.                                    CIVIL ACTION NO. 3:13-cv-1493
     LA. DOC #554828
VS.                                                  SECTION P

                                                     JUDGE ROBERT G. JAMES

WARDEN TIM KEITH                                     MAG. JUDGE KAREN L. HAYES

<u>REPORT AND RECOMMENDATION</u>

*Pro se* Petitioner Freddie Kidd, Sr., a prisoner in the custody of Louisiana's Department

of Corrections, filed the instant Petition for writ of *habeas corpus* on June 5, 2013.  Petitioner

attacks his 2009 conviction for attempted murder and the 18 year hard labor sentence imposed by

the Fourth Judicial District Court, Ouachita Parish.  This matter has been referred to the

undersigned for review, report, and recommendation in accordance with the provisions of 28

U.S.C. § 636 and the standing orders of the Court.  For reasons assigned below, it is

recommended that the Petition, [doc. # 1], be **DENIED**.

<u>Background</u>

The underlying facts in this case have been set forth by the Louisiana Second Circuit

Court of Appeal as follows:

> Defendant, Fred D. Kidd, Sr., and Elizabeth Robinson had been involved in a
> tumultuous, on-again, off-again relationship for over seven years. Defendant at the
> time of the shooting was 54 years old, stood 6' 2" and weighed 210 pounds. Ms.
> Robinson testified that, at the time of the shooting, she was 44 years old, stood 5' 11"
> and weighed 220 pounds. We note, however, that Ms. Robinson's medical records
> of that night showed her weight to be 233 pounds. Obviously, both were
> heavyweights.
>
> According to much of the testimony at trial, the two fought frequently. Ms. Robinson
> testified to defendant's physical abuse against her. Other witnesses testified to Ms.
> Robinson's abuse of defendant and in particular, to two confrontations that occurred

within three months of the shooting.

In March 2006, Ms. Robinson came uninvited to the Matador Ball and called defendant to come outside where she tore off his bow tie and soiled his shirt. A security officer at the Ball testified that he required Ms. Robinson to leave. In April 2006, Ms. Robinson went to a bar where defendant was drinking and pointed a handgun in his face. Thereafter defendant sought a restraining order against her; however, this action was dropped before the shooting. Ms. Robinson admitted both incidents but justified this aberrant behavior by stating that defendant had beaten her prior to his leaving to go to the Ball in March 2006 and the bar one month later.

*The Time and Location*
Defendant's house was located at the corner of Pine and 10th Streets in Monroe, Louisiana. A 911 call was received at 1:18 a.m. on May 12, 2006, concerning an alleged drive-by shooting outside of defendant's house. The house sits off the ground on piers. On the 10th Street side, a door opens onto a porch enclosed with waist-high railing looking down onto 10th Street. There was no yard, just the shoulder of the street. Ms. Robinson, who was standing on the shoulder of the street, was shot in the stomach by defendant, who was standing above her on the porch.

*State v. Kidd*, 55 So. 3d 90, 93-94 (La. App. 2 Cir. 2010).

The Second Circuit summarized additional evidence presented at trial as follows:

Significantly, the only testimony concerning what occurred the night of the shooting was from Ms. Robinson.

Ms. Robinson testified that she got off work at approximately 11:00 p.m. on May 11, 2006, and went home. After she had gone to bed, she returned a phone call from Jacqueline Kidd, defendant's daughter. Jacqueline told Ms. Robinson that she heard some gunshots fired off near her father's house. This was confirmed by Jacqueline Kidd's testimony and the phone records. Then defendant phoned Ms. Robinson at 12:52 a.m. and asked her to come to his house because her nephew was there. Caller ID records confirmed the call and time. Ms. Robinson went to defendant's house, but parked down the street. She testified that she was uneasy about the situation because the lights were not on at defendant's house and because of what Jacqueline Kidd had said about gunshots being fired.

Ms. Robinson stated that she went to the door and rang the doorbell. Defendant came out onto the porch. He asked her why she was treating him badly.  After realizing that her nephew was not there, she left, telling defendant that she was not going to argue with him. Ms. Robinson then walked off the porch and heard defendant go back inside. She then heard him return to the porch. He called her name three times. After

the third time, Ms. Robinson turned around and defendant shot her in the abdomen. When he shot her, she fell face down onto the street. Defendant approached her and put the gun to the back of her head. Defendant left and Ms. Robinson heard him up on the porch talking to a 911 operator on the phone. At this time, Ms. Robinson identified defendant's voice on the 911 tape, which was played for the jury. The caller on the 911 recording stated that there had been a drive-by shooting.

After placing the call, defendant went back over to Ms. Robinson, turned her over, and looked at her gunshot wound. In the ambulance an officer asked Ms. Robinson if she knew the people in the maroon car who had shot her, and Ms. Robinson confided to the officer that defendant had shot her. Ms. Robinson testified that when she was lying in the street, defendant asked her to tell the police that she had been shot during a drive-by shooting.

A bullet was recovered from Ms. Robinson's body and was determined to have been fired from the .357 caliber gun which was recovered from defendant's home. Police officers testified that no weapon was found on Ms. Robinson or from the area where she was shot. The officers also found a half-empty bottle of Crown Royal inside defendant's house, and one officer testified that defendant smelled of alcohol.

The only witness presented by the defense who had any knowledge about the actual shooting was Canary Henderson, who lived across the street from defendant at the time of the shooting. Ms. Henderson testified that she was sitting on her porch stairs that night (that is, at 1:00 a.m.). She saw defendant come out onto his porch, and he was talking to someone. Ms. Henderson could not identify that person nor could she hear what was said. Even though Ms. Henderson was looking at the back of the other person, she said she saw the other person reach under his/her shirt. Ms. Henderson heard a gunshot and ran into her house. She did not report this to the police but told defendant a month later. Ms. Henderson was impeached by her prior inconsistent testimony at defendant's first trial. Moreover, the State elicited rebuttal testimony from Thomas Jones, an investigator with the District Attorney's Office, who stated that he put himself in the same situation as Ms. Henderson and it would have been extremely difficult, if not impossible, for Ms. Henderson to have viewed the interaction between defendant and Ms. Robinson on the night of the shooting.

*Motive*

After requesting that Ms. Robinson come to his house, defendant asked why she was treating him badly. Shortly before the shooting, Ms. Robinson had contacted an attorney who was representing defendant's employer in a workers' compensation suit filed by defendant. Ms. Robinson promised to testify that defendant had not injured himself on the job, but at home, and had fraudulently filed his claim for workers' compensation benefits. The employer subsequently subpoenaed Ms. Robinson for a hearing on May 15, 2006. Defendant was mailed a copy of the subpoena. On May 12,

2006, three days before the compensation hearing was scheduled to take place, defendant called Ms. Robinson and asked her to come to his house. When Ms. Robinson refused to talk to him and was leaving, he shot her. We note that defendant's attorney in the compensation case testified that Ms. Robinson wanted money. When none was paid, she contacted the employer's attorneys.

*Other Crimes Evidence*
On June 11, 2009, the State filed both a notice of its intention to use other crimes evidence and a motion for a *Prieur* hearing. The *Prieur* hearing was held on June 22, 2009, before jury selection. The State called Elizabeth Rayetta Robinson, the victim, to testify. Ms. Robinson testified that she and defendant were involved in a romantic relationship. She testified about a number of violent incidents wherein defendant would beat her and sometimes threaten her with a gun. She also testified to having threatened defendant with a gun and to a physical attack against defendant.

The trial court held that the evidence was admissible, finding that the State had proven by a preponderance of the evidence that the events had occurred, and that the prior acts were similar to the allegations in the instant charge. The trial court also held that the evidence was not unduly prejudicial and therefore admissible, as defendant would use self-defense as a justification for the shooting. Ms. Robinson testified the same at the trial.

*Id.* at 94-95.

On June 9, 2006, Petitioner was charged by bill of information with one count of attempted second degree murder. [doc. # 14-1, p. 59]. On June 27, a jury found Petitioner guilty as charged. *Id.* at 130. On September 9, 2009, he was sentenced to serve 18 years at hard labor. *Id.* at 159.

On June 1, 2010, Petitioner appealed his sentence and conviction to the Second Circuit Court of Appeals arguing: (1) insufficiency of the evidence; (2) improper introduction of other crimes evidence; (3) denial of the right to introduce other relevant evidence; (4) a *Batson* violation during jury selection; and (5) excessiveness of sentence. [doc. # 14-11, p. 38]. The Second Circuit affirmed his conviction and sentence on November 3, 2010. [doc. # 14-12, p. 2]. On December 14, 2010, Petitioner sought further direct review in the Louisiana Supreme Court.

4

*Id.* at 18.  On November 18, 2011, the Supreme Court denied writs.  *Id.* at 55.  Petitioner did not

seek further review in the United States Supreme Court.

On May 24, 2012, Petitioner filed a *pro se* application for post-conviction relief in the

Fourth Judicial District Court.  *Id.* at 56.  He raised four claims for relief: (1) the trial court erred

in denying the admission of certain evidence; (2) sufficiency of the evidence; (3) a *Batson*

violation; and (4) ineffective assistance of trial counsel based upon counsel's failure to

investigate and properly prepare for trial.  *Id.* at 61.  On May 31, 2012, the District Court denied

relief.  [doc. # 14-13, p. 3-4].  In so doing, the court determined that Claims 1-3 had been

thoroughly considered and litigated on appeal and therefore were not proper subjects for post-

conviction relief; as to the ineffective assistance of counsel claim, the court found it to be

"clearly contrary to the facts as contained in the record of this case."  *Id.*

On August 3, 2012, Petitioner filed a motion to amend and supplement his post-

conviction claims of ineffective assistance of counsel in order to add the following claims: (a)

counsel failed to object when the prosecutor vouched for the credibility of witnesses; (b) counsel

failed to object to the prosecutor's testimony concerning the victim's wounds; (c) counsel failed

to move for a change of venue; (d) counsel refused to allow Petitioner to testify on his own

behalf; (e) counsel failed to investigate the defenses of intoxication and insanity; (f) counsel

failed to object to the prosecutor's comment concerning proof of motive; and (g) counsel failed

to move for a new trial on the basis of the alleged *Batson* challenge.  *Id.* at 6-7.  On July 27,

2012, Petitioner filed an application for writs in the Second Circuit Court of Appeal raising the

claims of ineffective assistance of counsel raised in the aforementioned amended application.  *Id.*

at 8.  On September 20, 2012, the Second Circuit denied writs.  *Id.* at 14.  On October 25, 2012,

5

Petitioner sought writs in the Louisiana Supreme Court raising the ineffective assistance of counsel claims raised in the request to amend post-conviction relief, along with the three claims rejected by the District Court as having been fully litigated on direct appeal.  *Id.* at 15.  On March 15, 2013, the Supreme Court denied his writ application without comment.  *Id.* at 32.

Petitioner filed the instant Petition for *habeas corpus* on June 5, 2013.  [doc. # 1].  He argues the following claims: (1) the state *habeas* court failed to hold an evidentiary hearing and failed to appoint counsel; (2) ineffective assistance of counsel; and (3) the state *habeas* court failed to reconsider three claims that Petitioner raised on direct appeal.  *Id.*  Petitioner also demands an evidentiary hearing and appointed counsel.  *Id.*  The matter is now before the undersigned.

## Law and Analysis

### I.      Standard of Review – 28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs *habeas corpus* relief.  The AEDPA limits how a federal court may consider *habeas* claims.  After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]"  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011)  An inmate must show that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

6

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362 (2000)). "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 740. Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## II.     Petitioner's Claims

A. Claim One: Trial Court Failure To Hold An Evidentiary Hearing And To Appoint Counsel

Petitioner first claims that the state *habeas* court failed to appoint counsel and failed to hold an evidentiary hearing on his ineffective assistance of counsel claims. [doc. # 1, p. 8]. However, infirmities in state *habeas corpus* proceedings do not state a claim for federal *habeas corpus* relief. *Vail v. Procunier*, 747 F.2d 277 (5th Cir. 1984); *see Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999). Accordingly, Petitioner's claims are not cognizable under federal *habeas corpus* review and should be **DENIED**.

B. Claim Two: Ineffective Assistance Of Counsel

Petitioner alleges that his trial attorney was ineffective for: (a) failing to object to the prosecutor testifying as to the nature and cause of the victim's wound; (b) refusing to place Petitioner on the witness stand; (c) refusing to move for a change of venue; (d) failing to object to the prosecutor's comment that he did not have to prove any motive; (e) failing to investigate and perfect an intoxication and/or insanity defense; and (f) failing to object to the victim's false testimony.  [doc. # 1, p. 8-9].

Ineffective assistance of counsel claims may be considered under 28 U.S.C. § 2254.  *See Clark v. Thaler*, 673 F.3d 410 (5th Cir. 2012); *Amos v. Thornton*, 646 F.3d 199 (5th Cir. 2011). Substandard advice of counsel rises to a constitutional violation only if the substandard conduct deprives the petitioner of his constitutional right to a fair trial or deprives the petitioner of some other constitutional right.  *Strickland v. Wash.*, 466 U.S. 668, 686-87 (1984).  To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his counsel's actions fell below an objective standard of reasonableness and that the ineffectiveness of counsel prejudiced him.  *Id.*

If the petitioner does not make a sufficient showing as to one prong of the test, the other prong need not be considered.  *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997).  The prongs of the test also need not be analyzed in any particular order.  *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997).  Furthermore, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."  *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998).

8

In applying the first prong of *Strickland*, a court should presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy.  *See Strickland*, 466 U.S. at 689-90.  The petitioner must show that the performance of counsel fell "outside the wide range of professionally competent assistance."  *Id.* at 690; *Ward v. Whitley*, 21 F.3d 1355 (5th Cir. 1994).

To establish prejudice, the second prong, the petitioner must demonstrate that counsel's actions "were so serious as to render the proceedings unreliable and fundamentally unfair."  *U.S. v. Saenz-Forero*, 27 F.3d 1016, 1021 (5th Cir. 1994); *Murray v. Maggio*, 736 F.2d 279 (5th Cir. 1984).  Unreliability and unfairness do not result "if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993); *see also Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995).  Accordingly, counsel cannot be ineffective for failing to raise a meritless claim, *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995), and prejudice generally exists only if the defendant demonstrates that he would have received less jail time.  *U.S. v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004).

i. Failure To Object To The Prosecutor's Testimony

Petitioner first alleges that trial counsel was ineffective for failing to object "to the prosecutor testifying as to the nature and cause of the victim's wound including the positions of the victim and defendant at the time of the shooting as an expert without any qualifications . . . ." [doc. # 1, p. 8].  The Court notes, initially, that counsel is not required to make futile motions or objections.  *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990).  In addition, an attorney's choice of whether or not to make certain objections falls within the ambit of "trial strategy" and will not

stand as support for an ineffective assistance of counsel claim. *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984).

More importantly, the record is devoid of any showing that the prosecutor testified as to the nature and cause of the victim's wound as an expert witness. That said, counsel cannot be ineffective for failing to object to testimony that never occurred. This claim is without merit.

ii. Refusing To Place Petitioner On The Witness Stand To Testify

Petitioner next alleges that counsel refused to place him on the witness stand to testify "as to the victim's dangerous character and threats against his person by her to show: (1) defendant's reasonable apprehension of danger which would justify his conduct; and (2) to show the victim was the aggressor."

In *U.S. v. Martinez*, 181 F.3d 627, 628 (5th Cir. 1999), the Fifth Circuit noted that a criminal defendant has a well established constitutional right to testify in his own behalf and that the right is granted to the defendant personally and not to his counsel. While a defendant may waive his right to testify, such a waiver must be made voluntarily and intelligently; that is, a defense attorney cannot make the decision on behalf of his client and cannot compel a criminal defendant to remain silent. *Id.* The constitutional right to testify is violated if the final decision that a defendant will not testify is made against his will. *Jordan v. Hargett*, 34 F.3d 310, 312 (5th Cir. 1994).

Further, and as mentioned, when a petitioner argues that his attorney interfered with his right to testify, this Court applies the *Strickland* standard. *See U.S. v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). But to begin to apply the *Strickland* standard a petitioner must first show that counsel did in fact interfere with his right. In other words, "although the ultimate decision

whether to testify rests with the defendant, he is presumed to assent to his attorney's tactical decision not to have him testify." *U.S. v. Flores-Martinez*, 677 F.3d 699, 711 (5th Cir. 2012).

Here, prior to the last defense witness testifying, the following colloquy took place:

Counsel: Your Honor, I'm going to consult with [Petitioner] for five minutes and if he does–and if my client does not–if we decide not to put him on the stand I want to then go back on the record and make a statement that he's been advised whether or not he could take the stand in his own defense or if he choose [sic] not to, just note that for the record.

Court: All right.

\* \* \*

Counsel: I've spoken with [Petitioner] in private as well as [Petitioner] and the family and then back with [Petitioner] as to whether or not he desires to take the stand in his own defense, and [Petitioner] has indicated that he would not be testifying in his defense in this particular case. I've advised him of all his constitutional rights. Uh, and after understanding his rights he has declined to testify. So he's been fully informed, and I just want the record to reflect such.

\* \* \*

Counsel: And I want to just confirm what I stated on the record about the advice that I've given to my client.

Court: Right.

Counsel: [Petitioner], would you affirm that please, sir?

Petitioner: It's affirmed.  Yes, sir.

Court: Okay. You've been fully advised that you had the right to remain silent and you don't have to testify, but if you do testify you're waiving your right against self incrimination and the prosecutor has the right to question you regarding any relevant fact of this case.  But you have elected not to testify.  Is that correct? You decided to stand on your constitutional right to remain silent?

Petitioner: Remain silent.

[doc. # 14-9, p. 62-66].

11

Thus, the record shows that Petitioner voluntarily waived his right to testify.  Petitioner

has not overcome the presumption that he assented to his attorney's decision not to have him

testify.  To be sure, Petitioner's "failure to stand up in court and to insist on testifying is not

dispositive of the issue whether he acquiesced in his attorney's decision that he not testify."  *U.S.*

*v. Araujo*, 77 Fed. Appx 276, 278 (5th Cir. 2003).  But, "a petitioner in a habeas proceeding

cannot prevail on such a claim merely by stating to the habeas court that he told his trial attorney

that he wished to testify and that his attorney forbade him from taking the witness stand."

*Turcios v. Dretke*, 2005 WL 3263918, at *6 (S.D. Tex. Nov. 29, 2005).  Petitioner has not

presented any specific evidence showing that trial counsel did anything that prevented him from

exercising his constitutional right to testify.  The record is devoid of any showing that counsel

refused to let him testify.  Petitioner's ineffective assistance of counsel claim on this basis is

without merit.

### iii. Counsel Refused To Move For A Change Of Venue

Petitioner claims that counsel was ineffective for refusing to move "for change of venue

due to the State's dropping all pending criminal charges I brought against the victim after I shot

the victim under the belief the victim had suffered enough."  [doc. # 1, p. 8].  Petitioner does not

elaborate on this permutation of ineffective assistance.

The pertinent statute governing venue, LA. CODE. CRIM. P. art 622, states, in relevant

part: "In deciding whether to grant a change of venue the court shall consider whether the

prejudice, the influence, or the other reasons are such that they will affect the answers of jurors

on the voir dire examination or the testimony of witnesses at the trial."  Moreover, in order to

prevail, a post-conviction petitioner must allege specific facts in support of his claim that the

venue was improper.  *See Smith v. Puckett*, 907 F.2d 581 (5th Cir. 1990).  What is more, in

reviewing a *habeas* petitioner's argument that counsel was ineffective for failing to move for a

change of venue, the Fifth Circuit, in *Sharp v. Johnson*, 107 F.3d 282, 287 (5th Cir. 1997),

considered  "the deference customarily owed to the tactical decisions of trial counsel in jury

selection" as a factor to be considered in the analysis.

       Here, Petitioner does not specify exactly how the State's action in dropping the charges

against the victim influenced or prejudiced the jurors' answers on voir dire or the witnesses'

testimony at trial.  Given the highly deferential scrutiny accorded to counsel's tactical decisions,

the Court cannot conclude that counsel's performance was deficient.

      iv.  <u>Failure To Object To The Prosecutor's Comment That He Did Not Have To Prove</u>
          <u>Any Motive</u>

       Petitioner alleges that counsel failed to object to the prosecutor's comment that "he didn't

have to prove any motive in support of attempted second degree murder whereas the State's

entire case was built around the fact [that] I lured her to my home to kill her in connection with

her expected testimony in my then pending Worker's Compensation claim, a fact I denied in

raising self defense to which the State never proved beyond a reasonable doubt."  [doc. # 1, p. 9].

       As stated above, counsel is not required to make futile motions or objections.  *Koch*, 907

F.2d at 527.  In addition, an attorney's choice of whether or not to make certain objections falls

within the ambit of "trial strategy" and will not stand as support for an ineffective assistance of

counsel claim.  *Murray*, 736 F.2d at 282.

       Here, counsel's decision not to object amounts to trial strategy and will not support

Petitioner's claim of ineffectiveness.  Moreover, the Court notes that motive is not a required

element of the crime of attempted second degree murder.[1]  *State v. Wommack*, 770 So. 2d 365,

370 (La. App. 3 Cir. 2000).  Consequently, counsel is not considered ineffective for failing to

object to what was, essentially, a correct statement of law.  In other words, any objection would

have been groundless.

     v. Failure To Investigate An Intoxication Or Insanity Defense

     Petitioner alleges that counsel was ineffective for failing to "investigate and perfect the

intoxication and/or insanity defense despite having knowledge of [his] intoxication on the night

of the shooting when the victim appeared at [his] home without notice or [his] consent despite

briefly talking to [his] daughter on the telephone for trial and sentencing purposes which would

have required the State to negate by proof beyond a reasonable doubt."  [doc. # 1, p. 9].

     When assessing the reasonableness of an attorney's investigation, a court must "consider

not only the quantum of evidence already known to counsel, but also whether the known

evidence would lead a reasonable attorney to investigate further."  *Miller v. Dretke*, 420 F.3d

356, 361 (5th Cir. 2005), (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)).  "Counsel is not

required to pursue every path until it bears fruit or until all conceivable hope withers."  *Lovett v.

Fla.*, 627 F.2d 706, 708 (5th Cir. 1980).  In order to establish that an attorney was ineffective for

failing to investigate, a petitioner must allege with specificity what the investigation would have

revealed and how it would have changed the outcome of the trial.  *Miller*, 420 F.3d at 361.

     Here, Petitioner does not specify what evidence further investigation would have

revealed.  In addition, Petitioner fails to point to any evidence that would support either an

---

[1] As noted above, Petitioner was convicted of attempted second degree murder.  [doc. # 14-1, p. 130].

14

intoxication or insanity defense.  The Court cannot conclude, from Petitioner's unsupported and wholly unexplained claim, that counsel was ineffective for failing to investigate an intoxication or insanity defense.

vi. Failure To Object To The Victim Testifying Falsely

Petitioner baldly alleges that counsel was ineffective for failing to "object to the victim testifying falsely as to other crimes allegedly committed upon her person by [Petitioner] without any proof or collaborating testimony . . . ."  [doc. # 1, p. 9].  It is unclear whether Petitioner takes issue with the veracity of the testimony, the admissibility of the testimony, or the lack of evidence supporting the testimony.

To begin with, Petitioner fails to provide any evidence showing that the testimony was false or that counsel knew that the testimony was false.  In any event, and to repeat, counsel is not required to make futile motions or objections, *Koch*, 907 F.2d at 527, and an attorney's choice of whether or not to make certain objections at all falls within the ambit of "trial strategy" and will not stand as support for an ineffective assistance of counsel claim.  *Murray*, 736 F.2d at 282.  With that in mind, the Court finds that counsel's decision not to object amounts to trial strategy and does not constitute deficient performance.

Petitioner has failed to demonstrate that he received ineffective assistance of counsel.  Accordingly, it is recommended that Petitioner's ineffective assistance of counsel claims be **DENIED**.

C. Claim Three: Trial Court Failed To Consider Three Claims Raised On Direct Appeal

Petitioner claims that the state trial court, on collateral review, "refused to reconsider three constitutional claims raised on direct appeal . . . ."  [doc. # 1, p. 9].  The trial court refused

15

to reconsider the following issues: (1) whether the trial court erred in denying admission of relevant evidence; (2) whether there was sufficient evidence to prove beyond a reasonable doubt that the State proved that Petitioner was guilty of attempted second degree murder; and (3) whether the trial court erred by allowing the State to exclude jury venire members based solely on race.  [doc. # 14-13, p. 3].  In so refusing, the court stated: "Issues 1-3 above were fully and thoroughly considered by the Louisiana Second Circuit Court of Appeal and the Supreme Court denied writs.  This Court will therefore not consider the first three issues as they have been fully litigated on direct appeal, as is appropriate."  *Id.*  The court, undoubtedly, relied on LA. CODE CRIM. PROC. art. 930.4(A), which provides that "[u]nless required in the interest of justice, any claim for relief which was fully litigated in an appeal from the proceedings leading to the judgment of conviction and sentence shall not be considered."[2]

As stated above, infirmities in state *habeas corpus* proceedings do not state a claim for federal *habeas corpus* relief.  *Vail*, 747 F.2d at 277.  Moreover, "[i]n conducting *habeas* review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  The Fifth Circuit has held that the failure of a state to follow its own rules of procedure is not grounds for relief in federal *habeas* actions.  *Lavernia v. Lynaugh*, 845 F.2d 493, 495 (5th Cir. 1988).  Accordingly, because Petitioner challenges the state *habeas* court proceeding and the court's application of its own procedural rule, Petitioner's claim is not cognizable under federal *habeas corpus* review and should be **DENIED**.

---

[2] "The bar imposed by article 930.4(A) is not a procedural bar . . . ."  *Bennett v. Whitley*, 41 F.3d 1581, 1583 (5th Cir. 1994).  Article 930.4(A) does not prevent this Court from addressing the merits of Petitioner's claim.

D. <u>Evidentiary Hearing And Appointment Of Counsel</u>

Finally, Petitioner requests both an evidentiary hearing and appointed counsel to perfect the claims at issue here.  [doc. # 1, p. 10].

Under Rule 8(a) of the Rules governing Section 2254 cases, "the judge must review the answer [and] any transcripts and records of state proceedings . . . to determine whether an evidentiary hearing is warranted."  In making this determination, a federal court must consider whether a hearing "could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal *habeas* relief."  *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).  "Because the deferential standards prescribed by Section 2254 control whether to grant *habeas* relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate."  *Id.*  "[I]f the record refutes the applicant's factual allegations or otherwise precludes *habeas* relief, a district court is not required to hold an evidentiary hearing."  *Id.*  Here, as the forgoing discussion indicates, the record demonstrates that none of Petitioner's claims have merit.  Accordingly, an evidentiary hearing is not warranted.

Nor is Petitioner entitled to the appointment of counsel.  A federal *habeas* court will only appoint counsel to a petitioner seeking relief under Section 2254 where "the interests of justice so require and such person is financially unable to obtain representation."  *Schwander v. Blackburn*, 750 F. 2d 494, 503 (5th Cir. 1985).  Petitioner has failed to show that the interests of justice would be served by the appointment of counsel.

**Conclusion**

For the reasons stated above, **IT IS RECOMMENDED** that the Petition for *habeas corpus* filed by Petitioner Freddie Kidd, Sr., [doc. # 1], be **DENIED and DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28

18

U.S.C. § 2253(c)(2).  **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 27th day of December, 2013.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

19